JS - 6

### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 5:21-cv-00988-JVS consol with<br>5:21-cv-01019-J VS and 5:21-cv-01021-JVS | Date | May 20, 2022 |

| | |
|---|---|
| Title | In re Terry Lee Fleming, Sr. |

---

Present: The
Honorable       **James V. Selna, U.S. District Court Judge**

| Lisa Bredahl | Not Present |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Not Present | Not Present |

**Proceedings:**    **[IN CHAMBERS] Order Regarding Appeal of Chapter 11 Plan Confirmation**

Secured creditor Havasu Lakeshore Investments, LLC ("HLI") appeals three Bankruptcy Court orders related to the confirmation of a Chapter 11 plan of reorganization. Op. Br., Dkt. 20. Appellees Terry Fleming, Sr. ("Debtor"), Terry Fleming, Jr. ("Fleming, Jr."), and Havasu Landing, LLC ("Landing") (collectively, "Appellees") responded. Opp'n, Dkt. 24. HLI submitted a reply. Reply, Dkt. 25.

After the close of briefing, Appellees filed a Notice of Closing of Sale regarding some of the properties at issue in this appeal. See Dkt. 26. HLI submitted an additional filing regarding the impact of the sale on its arguments. See Dkt. 27. Appellees responded to HLI's supplemental briefing. See Dkt. 28.

After the Court posted its tentative order, Appellees filed a request for hearing. See Dkt. 29. Upon the Court's invitation, HLI opposed the request. See Dkt. 31. The Court has considered both parties' arguments and finds that oral argument would not be helpful in this matter. Fed R. Civ. P. 78; L.R. 7-15.

For the following reasons, the Court **VACATES** the Bankruptcy Court's order confirming the plan and **REMANDS** for further proceedings consistent with this decision.

---

JS - 6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   5:21-cv-00988-JVS                              Date   May 20, 2022
           5:21-cv-01019-JVS
           5:21-cv-01021-JVS

Title   In re Terry Lee Fleming, Sr.

## I. Background

This consolidated appeal concerns whether the Bankruptcy Court erred in confirming the Chapter 11 plan in the bankruptcy of Terry Lee Fleming, Sr. ("Debtor"). See Dkt. 19 (consolidating appeals from three orders). On June 9, 2021, the Bankruptcy Court confirmed the Joint Chapter 11 Plan of Reorganization put forward by three proponents: Debtor; Terry Lee Fleming, Jr., Debtor's son; and Landing. ER 3445–67.[1] Debtor owns a 45 percent interest in Landing, and Fleming, Jr. owns the remaining 55 percent interest. The Bankruptcy Court confirmed the 2021 Plan as a "cram down" over the dissent of HLI, a secured creditor. Debtor had previously invested in a real estate project with HLI that ultimately led to litigation. ER 4–5. In February 2015, the Orange County Superior Court entered a judgment in the amount of $3,694,353.00 against Debtor and in favor of HLI. ER 5. Including accrued interest, the Bankruptcy Court calculated that the value of HLI's Class 1 Secured Claim (the "Claim") was $5,399,623 as of April 30, 2019. ER 1106; ER 3717. A Chapter 11 plan was confirmed in 2019, and then vacated on appeal. As this appeal concerns overlapping issues, the Court begins by reviewing the confirmation of the earlier plan.

### A.    2019 Plan

In April 2019, the Bankruptcy Court conducted a three-day trial regarding confirmation of Debtor's proposed Chapter 11 plan ("the 2019 Plan"). ER 1174–75. Relevant to this appeal, the Bankruptcy Court heard extensive evidence regarding the valuation of forty-six finished lots and three completed homesites at Vista Del Lago, a real estate development (the "Lots"). Id.; ER 3717. Both parties' experts testified that the commercially reasonable method would be to sell the lots individually, which the Bankruptcy Court accepted. ER 3721. Appellees' expert, Michael J. Vanderley ("Vanderley") presented evidence valuing the Lots between $3,694,900 and $3,737,000. ER 3720–21. HLI's expert arrived at a net present fair market value of less than half that amount, but the Bankruptcy Court concluded that his analysis was "materially lacking in

---

[1] Throughout this Order, the Court cites to the evidentiary record prepared by the parties for this appeal. See Dkt. 21; Dkt. 24-1.

JS - 6

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 5:21-cv-00988-JVS<br>5:21-cv-01019-JVS<br>5:21-cv-01021-JVS | Date | May 20, 2022 |

Title     In re Terry Lee Fleming, Sr.

credibility and entitled to no weight in determining the fair market value of the subject property." ER 3718.

Vanderley provided two sets of calculations, both of which relied on a present-day value of $71,500 for each Lot without a finished home. Assuming a six-month sales cycle, he calculated an aggregate present-day value of $3,737,000; assuming a nine-month sales cycle, he calculated an aggregate present-day value of $3,694,000. Vanderley Decl., Bankr. Dkt. 269, Ex. 2.[2] The difference between the six and nine month valuations accounts for time dependent costs, including HOA dues, property taxes, oversight, and administration. Id. Vanderley also performed a discounted cash flow ("DCF") analysis. His DCF analysis assumed that ten lots would be sold per year, and that the value of the Lots would grow by 8.5% per year. It also took into account the taxes, HOA dues, and project oversight costs that would accumulate throughout the projected five year period before all sales would be complete. Assuming a discount rate of 5.6%, he calculated a DCF valuation of $3,515,000; assuming a discount rate of 10.6%, he calculated a DCF valuation of $3,182,000. Vanderley Decl., Bankr. Dkt. 269, Ex. 3.

During his testimony, Vanderley stated that "[a] DCF analysis effectively equates to a bulk sale. Because what's happening in the DCF analysis is that it assumes, what would a buyer pay today for the right to obtain this potential future economic performance that is embodied in the cash-flow projections." Hearing Tr. at 196:17–21, Bankr. Dkt. 325 (April 26, 2019). However, he went on to state that "DCF models like this, and like the one that Mr. Detling prepared, are the real estate functional equivalent of a crystal ball. And they are extremely dependent on several variables, but the three key ones here are the rate at which sales occur, the pricing at which sales occur, and the growth rate component of that, and then of course, your discount rate." Hearing Tr. at 192:10–16, Bankr. Dkt. 325 (April 26, 2019).

---

[2] Throughout this Order, the Court uses the abbreviation "Bankr. Dkt." when citing to the docket in the underlying bankruptcy case, In re Terry Lee Fleming, Sr., No. 6:17-bk-19513-MW (Bankr. C.D. Cal.).

JS - 6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 5:21-cv-00988-JVS<br>5:21-cv-01019-JVS<br>5:21-cv-01021-JVS | Date | May 20, 2022 |

| | |
|---|---|
| Title | In re Terry Lee Fleming, Sr. |

     After reviewing the evidence and hearing expert testimony, the Bankruptcy Court adopted Vanderley's aggregate present-day value method.  In confirming the 2019 Plan, the Bankruptcy Court cited to Vanderley's testimony calling DCF models "the real estate functional equivalent of a crystal ball" in support of its decision to reject his DCF analysis.  ER 3721 n.4.  The Bankruptcy Court valued the Lots at $3.694 million, the low end of the values calculated using Vanderley's aggregate present-day value method.  ER 3721.

     On June 19, 2019, the Bankruptcy Court entered an order confirming the 2019 Plan over HLI's objections.  Bankr. Dkt. 339.  See ER 3712–28.  In partial satisfaction of HLI's claim, the 2019 Plan called for the transfer of the Lots as the "indubitable equivalent" of a $3,694,000 payment on the claim.  See Bankr. Dkt. 339 at 13–17.  It also called for HLI to receive a $500,000 cash payment on the effective date of the 2019 Plan and a total of  $1,205,622.69 over five years in deferred payments plus interest.  Id. at 13.  HLI filed a timely notice of appeal with respect to the confirmation order on July 2, 2019.  See Bankr. Dkt. 345.  HLI also sought a stay of the 2019 Plan pending its appeal, which was denied by the Bankruptcy Court.  See Bankr. Dkt. 359.  Thus, the 2019 Plan went into effect on July 9, 2019, and the Lots were transferred in partial satisfaction of HLI's claim.  See ER 1175–76.

     On appeal, HLI argued that the 2019 Plan was not "fair and equitable" with respect to its Secured Claim.  The Bankruptcy Appellate Panel of the Ninth Circuit ("BAP") agreed and vacated the order confirming the 2019 Plan.  See ER 2–21.  The BAP concluded that "transfer of the Lots for a dollar-for-dollar reduction of HLI's claim does not provide HLI with the indubitable equivalent of its secured claim."  ER 14.  The BAP did not disturb the Bankruptcy Court's valuation of the Lots at $3,694,000, ER 13, but held that the 2019 Plan "does not satisfy the indubitable equivalent standard of § 1129(b)(2)(A)(iii)" because it did not provide compensation for the time needed to sell the Lots and the accompanying risk.  ER 15.  The BAP remanded the case to the Bankruptcy Court, giving it the latitude to fashion relief consistent with its decision.  ER 19.

JS - 6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 5:21-cv-00988-JVS | Date | May 20, 2022 |
| | 5:21-cv-01019-JVS | | |
| | 5:21-cv-01021-JVS | | |

| Title | In re Terry Lee Fleming, Sr. |
| | |

B.    *Proposed Modified 2019 Plan*

On April 14, 2020, Appellees filed a motion in the Bankruptcy Court requesting confirmation of a modified version of the 2019 Plan (the "Modified 2019 Plan"). ER 21–50. The proposed Modified 2019 Plan used discounted cash flow analysis in an effort to conform with the BAP decision and provide HLI with the "indubitable equivalent" of its secured claim in satisfaction of section 1129(b)(2)(A)(iii). ER 41–47. The Modified 2019 Plan valued the Lots at $3.515 million based on Vanderley's DCF analysis that was conducted in 2019.

HLI objected to the proposed Modified 2019 Plan. ER 214–36. HLI relied on a discounted cash flow analysis performed using starting values based on an April 2020 appraisal to argue that the Lots should be assigned a significantly lower value. ER 231–32. HLI also questioned the choice of growth rate in sales price, discount rate, and sales velocity in Vanderley's DCF analysis. ER 228–30. HLI suggested alternate inputs for Vanderley's model and maintained that the valuation of the Lots could vary by over a million dollars if the Bankruptcy Court were to adopt its proposed inputs. See ER 230–32.

The Bankruptcy Court did not rule on the Modified 2019 Plan, and instead ordered the parties to a second mediation. ER 756–57. It did not address either parties' arguments regarding the DCF analysis in the Modified 2019 Plan. While the Bankruptcy Court had previously rejected the DCF analysis used by HLI's expert prior to the confirmation of the 2019 Plan, it ultimately relied on Vanderley's aggregate present-day value method. Thus, the record does not reflect any conclusions from the Bankruptcy Court regarding Vanderley's choice of discount rate or projected growth rate in sales price, among other key variables.

C.    *The 2021 Plan*

On February 12, 2021, the Appellees filed a new joint Chapter 11 plan (the "2021 Plan") that took a different approach and modified the obligations to reflect that many

JS - 6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   5:21-cv-00988-JVS          Date   May 20, 2022
           5:21-cv-01019-JVS
           5:21-cv-01021-JVS

Title      In re Terry Lee Fleming, Sr.

claims and creditors had been at least partially paid off.  ER 2963–89.  Prior to confirmation of the 2021 Plan, HLI proposed its own Competing Plan of Reorganization dated February 12, 2021 ("Competing Plan").  ER 831–74.  The Bankruptcy Court rejected the Competing Plan and found that HLI was not acting in good faith by proposing the terms.  ER 1535–41. HLI appealed the denial of the Competing Plan, which this Court dismissed because HLI did not timely file for leave to appeal.  See In re Terry Lee Fleming, Sr., No. 21-cv-685-JVS (C.D. Cal. July 7, 2021), Dkt. 23;  In re Terry Lee Fleming, Sr., No. 21-cv-686-JVS (C.D. Cal. July 7, 2021), Dkt. 27.

The Bankruptcy Court ultimately confirmed the 2021 Plan over HLI's objections. Opp'n at 16; ER 3289–92; 3427–44; 3445–47.  The 2021 Plan proposes cash transfers to HLI over a period of five years to pay a claim of $1,506,841.  ER 2977–80.  The 2021 Plan valued HLI's claim in that amount because "$4,194,000 in value was transferred to HLI pursuant to the 2019 Plan."  ER 2977.  The 2021 Plan calls for HLI to receive an effective date cash payment of $316,943, and then annual payments over a period of five years to fully pay its claim.  ER 2978–80.  All creditor classes voted in favor of confirmation of the Plan, with the exception of HLI.  ER 3436.

*D.     The Lots*

As of the effective date of the 2019 Plan, Landing transferred a total of 49 Lots to HLI.  The three finished homesites were sold in three separate transactions.  Lot 7 sold for $271,703.41; Lot 47 sold for $192,750.00; and Lot 57 sold for $244,268.28.  Op. Br. at 22.; ER 3213; 788–89; 2885–89.  While this appeal was pending, HLI closed on the sale of the remaining 46 unfinished lots.  The total sales price was $2,246,000, or an average of $48,826.09 per lot.  See Dkt. 27.  HLI submits that it incurred a total of $581,659.19 in holding and sales costs.  See Dkt. 27, Ex. A.  The holding costs include various late fees and penalties; the Court does not take any position on which of those costs, if any, should be excluded from an evaluation of reasonable holding costs.  See Dkt. 27, Ex. A.

**II. Legal Standard**

JS - 6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 5:21-cv-00988-JVS | Date | May 20, 2022 |
| | 5:21-cv-01019-JVS | | |
| | 5:21-cv-01021-JVS | | |

| Title | In re Terry Lee Fleming, Sr. |

A district court has jurisdiction to hear an appeal from a bankruptcy court.  See 28 U.S.C. § 158.  "On an appeal the district court or bankruptcy appellate panel may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings."  Fed. R. Bankr. P. 8013.  When examining an appeal, a district court uses the same standard of review that a circuit would use when reviewing a district court's decision.  See In re Baroff, 105 F.3d 439, 441 (9th Cir. 1997). "[F]indings of fact are reviewed under a clearly erroneous standard and conclusions of law are reviewed de novo."  Lundell v. Anchor Const. Specialists, Inc., 223 F.3d 1035, 1039 (9th Cir. 2000).  The court "must accept the bankruptcy court's findings of fact, unless 'the court is left with the definite and firm conviction that a mistake has been committed.'"  In re JTS Corp., 617 F.3d 1102, 1109 (9th Cir. 2010) (quoting In re Greene, 583 F.3d 614, 618 (9th Cir. 2009)).  "A court's factual determination is clearly erroneous if it is illogical, implausible, or without support in the record."  In re Retz, 606 F.3d 1189, 1196 (9th Cir. 2010).  Mootness is a jurisdictional issue that the Court reviews de novo.  In re Baker & Drake, 35 F.3d 1348, 1351 (9th Cir. 1994).

## III.  DISCUSSION

On appeal, HLI argues that the Bankruptcy Court erred in confirming the 2021 Plan.  In its view, the 2021 Plan is not "fair and equitable" because it does not pay HLI's Class 1 Secured Claim in full.  In addition to contending that the Bankruptcy Court reached the correct decision on the merits, Appellees argue that HLI's appeal is barred by the equitable mootness doctrine.  The Court begins by considering the question of equitable mootness before turning to the merits of the appeal.

### A.  *Equitable Mootness*

The doctrine of equitable mootness supports the public policy goals of allowing debtors, creditors, and third parties to rely on the finality of bankruptcy court orders.  In re Thorpe Insulation Co., 677 F.3d 869, 880 (9th Cir. 2012).  "Equitable mootness occurs when a 'comprehensive change of circumstances' has occurred so 'as to render it inequitable for this court to consider the merits of the appeal.'"  Id. (quoting In re Roberts Farms, 652 F.2d 793, 798 (9th Cir.1981)).  "The question is whether the case 'present[s]

JS - 6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 5:21-cv-00988-JVS | Date | May 20, 2022 |
| | 5:21-cv-01019-JVS | | |
| | 5:21-cv-01021-JVS | | |

| Title | In re Terry Lee Fleming, Sr. |

transactions that are so complex or difficult to unwind that the doctrine of equitable mootness would apply.'" Id. (quoting Lowenschuss v. Selnick (In re Lowenschuss), 170 F.3d 923, 933 (9th Cir. 1999)). "Unlike Article III mootness, which causes federal courts to lack jurisdiction and so to have an inability to provide relief, equitable mootness is a judge-created doctrine that reflects an unwillingness to provide relief." In re Transwest Resort Props., Inc., 801 F.3d 1161, 1167–68 (9th Cir. 2015) (emphasis omitted).

The Ninth Circuit has established a four-part test for equitable mootness. Courts "will look first at whether a stay was sought, for absent that a party has not fully pursued its rights." In re Thorpe, 677 F.3d at 881. "If a stay was sought and not gained, we then will look to whether substantial consummation of the plan has occurred. Next, we will look to the effect a remedy may have on third parties not before the court. Finally, we will look at whether the bankruptcy court can fashion effective and equitable relief without completely knocking the props out from under the plan and thereby creating an uncontrollable situation for the bankruptcy court." Id.

    *i.*    *Failure to Seek a Stay*

Appellees contend that HLI "admits it consciously chose not to seek a stay pending appeal." Opp'n at 23. They aver that HLI "essentially ratified the pre-confirmation transfers that took place over two years ago by subsequently selling Lots to third party purchasers." Id. HLI acknowledges that it did not request a stay of the order confirming the 2021 Plan. It maintains that this should be excused because it sought a stay of confirmation of the 2019 Plan and, in its view, the 2021 Plan is a mere continuation of the earlier plan. Reply at 5–6.

Appellees maintain that post-Thorpe, if a party failed to seek a stay there is no need to reach the other factors of the test. Opp'n at 22–23. Some courts have interpreted language in Thorpe as creating a threshold requirement of seeking a stay, but that is not universally the case. See In re Mortgages Ltd., 771 F.3d 1211, 1214–18 (9th Cir. 2014) (discussing the unresolved "tension" between Ninth Circuit case law); In re Greenberg, No. 20-cv-00506-GPC-MDD, 2020 WL 5909500, at *4 (S.D. Cal. Oct. 6, 2020) (reviewing conflicting authority about whether the failure to seek a stay is dispositive).

JS - 6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.     5:21-cv-00988-JVS                    Date    May 20, 2022
             5:21-cv-01019-JVS
             5:21-cv-01021-JVS

Title        In re Terry Lee Fleming, Sr.

In recent cases where parties failed to seek a stay, the Ninth Circuit, the BAP, and district courts have evaluated all four of the Thorpe factors because resting the decision solely on the failure to seek a stay would contradict binding Ninth Circuit authority. See In re Mortgages, 771 F.3d at 1217–18 (assessing appeal under Thorpe factors because resolving the tension in the case law would require overruling prior decisions); In re Eliminator Custom Boats, Inc., No. CC-19-1003-KuFL, 2019 WL 4733525, at *5 (BAP 9th Cir. Sept. 23, 2019) (holding that failure to seek a stay weighs in favor of finding the appeal equitably moot, but "does not require a mootness finding"); Carranza v. PCT Int'l Inc., No. CV-20-01307-PHX-DJH, 2021 WL 4060551, at *4 (D. Ariz. Sept. 7, 2021) (examining the other three equitable mootness factors because of a "discrepancy in the case law as to whether the failure to seek a stay is on its own controlling").

While HLI did not seek a stay of the 2021 Plan, it vigorously litigated this issue prior to that point.  It objected to the 2019 Plan based on the valuation of the Lots. The 2019 Plan was ultimately crammed down over HLI's objection and it timely filed a notice of appeal.  HLI also filed a motion for a stay of the 2019 Plan, which the Bankruptcy Court denied.  See Bankr. Dkt. 359.  The order denying the stay identified procedural flaws in HLI's request, but also provided alternate reasoning explaining why the Bankruptcy Court would reject the stay on the merits.  Id. at 5–8 (concluding that HLI failed to make a sufficient showing for a stay pending appeal because it "relie[d] upon its old, stale and already-rejected arguments" regarding the valuation of the Lots).  While HLI's appeal of the 2019 Plan was successful, by that time the Lots had already been transferred.  HLI then objected to the proposal for the Modified 2019 Plan, proposed its own Competing Plan, and strenuously objected to the 2021 Plan, all on the same grounds.

HLI raised the issues present in this appeal before the Bankruptcy Court on many different occasions, and it was apparent that the Bankruptcy Court did not find its arguments availing.  Moreover, the transaction that HLI would theoretically seek to stay had already taken place two years earlier. While it may have been wise to err on the side of caution and seek a stay, it is unlikely that HLI would have been successful in obtaining a stay of the 2021 Plan given the circumstances.

JS - 6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 5:21-cv-00988-JVS | Date | May 20, 2022 |
| | 5:21-cv-01019-JVS | | |
| | 5:21-cv-01021-JVS | | |

| | |
|---|---|
| Title | In re Terry Lee Fleming, Sr. |

While HLI's failure to seek a stay of the 2021 Plan weighs in favor of finding equitable mootness, it is not dispositive.  See In re Reed, No. BAP CC-16-1028-DKIF, 2016 WL 7189834, at *4 (B.A.P. 9th Cir. Dec. 2, 2016) ("Equitable mootness is not a punishment for choosing not to seek a stay.").  Thus, the Court will consider the remaining Thorpe factors.

  *ii.*  *Substantial Consummation*

The second equitable mootness factor asks whether the Plan was substantially consummated.  In re Thorpe, 677 F.3d at 881.  The Bankruptcy Code defines substantial consummation as "(A) transfer of all or substantially all of the property proposed by the plan to be transferred; (B) assumption by the debtor or by the successor to the debtor under the plan of the business or of the management of all or substantially all of the property dealt with by the plan; and (C) commencement of distribution under the plan." 11 U.S.C. § 1101(2).  "Although substantial consummation is a factor weighing in favor of finding the appeal moot, the law in this circuit requires that we still look at the third and fourth prongs of the equitable mootness test."  In re Transwest, 801 F.3d at 1169; see In re Mortgages, 771 F.3d at 629 ("Substantial consummation of a bankruptcy plan often brings with it a comprehensive change in circumstances that renders appellate review of the merits of the plan impractical.  But this is not always the case. . . . We must still consider whether, despite substantial consummation, we can fashion effective relief.").

Appellees argue that this factor weighs in favor of equitable mootness because all of the substantial consummation factors are satisfied.  Opp'n at 24.  HLI acknowledges that "the 2021 Plan is technically substantially consummated."  Reply at 8.  However, it argues that this factor should weigh against equitable mootness because the actions resulting in substantial consummation took place in connection with the 2019 Plan after it was confirmed but before it was vacated on appeal.  While that may be relevant to the Court's analysis of the other equitable mootness factors and the merits of the appeal, it does not change the fact that, at this stage, the 2021 Plan is substantially consummated.

Thus, the Court finds that the second factor weighs in favor of equitable mootness.

  *iii.*  *Effect of Requested Remedy on Third Parties*

JS - 6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 5:21-cv-00988-JVS<br>5:21-cv-01019-JVS<br>5:21-cv-01021-JVS | Date | May 20, 2022 |

| | |
|---|---|
| Title | In re Terry Lee Fleming, Sr. |

The third equitable mootness factor considers "whether modification of the plan of reorganization would bear unduly on the innocent." In re Thorpe, 677 F.3d at 881 (quoting In re 203 N. LaSalle St. P'ship, 126 F.3d 955, 961 (7th Cir. 1997), judgment rev'd on other grounds, 526 U.S. 434 (1999)). "Third parties' reliance on the consummation of the plan is not enough to find this prong satisfied. Rather, for this factor to weigh in favor of holding a party's appeal to be equitably moot, the specific relief sought must bear unduly on innocent third parties." In re Transwest, 801 F.3d at 1167. "An important consideration is whether all the parties affected by the appeal are before the court." In re Thorpe, 677 F.3d at 882; see In re Arnold & Baker Farms, 85 F.3d 1415, 1420 (9th Cir. 1996). If a party is involved throughout the process, the Ninth Circuit will not consider it to be an innocent third party, even it if does not appear as part of the appeal. See In re Transwest, 801 F.3d at 1170 (holding that a non-insider who funded the plan was not an "innocent third party" because it had participated in the confirmation, and thus presumably knew the risks of implementing a plan that was subject to appeal).

Appellees argue that Debtor's other creditors would be negatively affected because Debtor would lack the means to fully pay HLI's claim and also fully pay those claims. Because those parties voted to approve the plan, they contend that this vacating the 2021 Plan would be a bait and switch. Opp'n at 24. The Court is not convinced that the impact to other creditors is enough to establish that modification would bear unduly on the innocent. They may desire to see the confirmation of the plan upheld, but that should not moot the right of HLI, a secured creditor, to seek an appeal as to whether its claim received fair and equitable treatment. While they have legitimate interests as creditors, there is no indication that they made subsequent investments that would be harmed by the unraveling of the plan. Additionally, as discussed below, it is not certain that any other creditors will necessarily be required to accept smaller payments on their claims. If modification in this instance unduly affected the innocent, then this factor would weigh in favor of equitable mootness in nearly every instance. See In re Thorpe, 677 F.3d at 882; cf. Carranza, 2021 WL 4060551, at *5 (clawing back of funds would be unpracticable where debtor corporation had already spent the funds on third parties not before the court, including employees, utility providers, and landlords).

JS - 6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    5:21-cv-00988-JVS                    Date    May 20, 2022
            5:21-cv-01019-JVS
            5:21-cv-01021-JVS

Title    In re Terry Lee Fleming, Sr.

      Appellees also argue that Landing is an innocent third party that would be negatively impacted by modification of the 2021 Plan.  First, the Court disagrees with the premise that Landing is an innocent third party.  Debtor owns a 45% interest in the entity and it is a joint proponent of the 2021 Plan.  This is outside the scope of what courts consider to be an innocent third party.  See In re Transwest, 801 F.3d at 1170 (holding that a non-insider who funded the plan was not an "innocent third party").

      The Court is also unclear as to the import of Appellees' assertion that Landing would withdraw its funding from a modified plan if the valuation of the Lots was altered, thus further limiting the funds available to pay to other creditors.  Opp'n at 25.  After reviewing the terms of the 2021 Plan, the Court is not inclined to agree with that contention.  It does not appear that vacating the 2021 Plan will necessarily result in the consequences that Appellees warn of.  Even if it did, the Plan states that it would rely in part on the monetization of Debtor's interest in Landing.  It presumably could provide an alternate source of funding to the extent that Landing refuses to provide cash.

      Appellees have not identified innocent third parties who have taken actions or received funds in reliance on existence of the 2021 Plan.  The third parties it suggests will be negatively impacted are Landing, a proponent of the Plan and an entity that is 45% owned by Debtor, and Debtor's other creditors.  Even if the relief they receive may ultimately be less than what they received under the 2021 Plan, that should not prevent the Court from considering HLI's appeal.

      Thus, the Court finds that the third factor weighs against equitable mootness.

      *iv.    Ability to Fashion Relief*

      The final factor asks "whether the bankruptcy court on remand may be able to devise an equitable remedy."  In re Thorpe, 677 F.3d at 883.  The Ninth Circuit has noted that "[t]he party asserting mootness has a heavy burden to establish that there is no effective relief remaining for a court to provide."  In re Focus Media, Inc., 378 F.3d 916, 923 (9th Cir. 2004) (quoting In re Pintlar, 124 F.3d 1310, 1312 (9th Cir. 1997)).

JS - 6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 5:21-cv-00988-JVS | Date | May 20, 2022 |
| | 5:21-cv-01019-JVS | | |
| | 5:21-cv-01021-JVS | | |

| | |
|---|---|
| Title | In re Terry Lee Fleming, Sr. |

Appellees contend that the relief sought by HLI would require complete unwinding of the Plan. Opp'n at 26. They argue that the bankruptcy filings establish that Debtor lacks the cash to make the payment requested by HLI while satisfying other creditors. HLI disagrees. The parties draw different conclusions from the financial projections included as exhibits to the 2021 Plan. The 2021 Plan provides that "Debtor intends to fund his 100% Plan through a combination of Cash, credits, monetizing the equity in the Real Property (by way of a sale or refinance) and utilizing the value of his 45% interest in Landing (by monetizing it to obtain cash to be turned over to HLI)." ER 1199. "Debtor's interest in Havasu Landing, Cash and Real Property are his most significant assets that will be used as major sources of funding under the Plan. These are necessary for the payment of creditor claims, most notably, the remainder of the HLI Judgment – which the Plan provides will be paid by way of the HLI Effective Date Cash Payment and the HLI Minimum Annual Payments." ER 1215.

The Financial Projections contain two different spreadsheets, both of which show sufficient cash flow to make all payments over the next five years. ER 1240–41; see ER 1223 ("Proponents believe there will be adequate cash flow during the next five years to make all required payments to all Allowed Claims of Creditors as called for under the Plan. To be clear, this estimate of cash flow adequacy assumes the liquidation of real property collateral needed to fully pay the HLI Secured Claim, to the extent it is adjudicated to be an Allowed Claim."). The two different Financial Projections are largely identical, other than the valuation of Debtor's beginning non-cash assets. In one, Debtor's 45% interest in Landing is valued at $1,500,000 and his 9.25% interest in HLI is valued at $425,000. ER 1240. At the end of that five-year projection, Debtor has remaining total assets of $2,393,113. Id. The second projection does not allot any value to the Debtor's interests in Landing and HLI. ER 1241. At the end of that five-year projection, Debtor has remaining total assets of $467,613. Id.

Prior to the confirmation of the 2021 Plan, it appears that the parties disagreed about how to appropriately value Debtor's non-cash assets. See ER 1166–67 ("According to the Debtor's Schedules, Debtor believes the liquidation value of his 45% interest in Havasu Landing is approximately $1,500,000. Proponents believe that the value of Debtor's capital account in Landing may be as low as $713,300, based on the tax

JS - 6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 5:21-cv-00988-JVS | Date | May 20, 2022 |
| | 5:21-cv-01019-JVS | | |
| | 5:21-cv-01021-JVS | | |

| Title | In re Terry Lee Fleming, Sr. |

treatment of transfers of $3,694,000 in value as of the effective date of the 2019 Plan. However, for purposes of the Plan, and conditioned upon confirmation of the Plan, TLF and Landing are willing to proceed under the assumption that the value of Senior's interest in Landing remains $1,500,000."); ER 1166 ("Plan Proponents believe a 9.25% interest in HLI has a value of between $425,500 and $480,000.  HLI disagrees and contends a 9.25% interest is worthless.  This disagreement is immaterial for purposes of the Plan because Proponents do not rely on this asset to meet the payment obligations thereunder.").

After reviewing the financial projections and their underlying assumptions, the Court is not persuaded that relief would require completely unwinding the 2021 Plan. The Court does not take a position on the correct valuation of Debtor's interests in Landing or HLI.  However, Appellees previously maintained that Debtor's interests in HLI and Landing both had value.  It seems somewhat self-serving to cite to lower valuations to assert mootness at this stage, when they took the opposite position during the Plan confirmation process.  Regardless, under either projection, Debtor would have remaining assets of over $467,000 at the end of five years.  Appellees also contend that the 2021 Plan rests entirely on the $3.694 million valuation of the Lots and would need to be fully unwound if that were disturbed.  However, that assertion directly contradicts what was said in the Plan itself at the time of confirmation.  See ER 1166 ("Proponents' Plan is premised upon this valuation but, as described more fully herein, not entirely dependent upon it.").

Finally, Appellees assert that the Plan relies on the participation of Landing, both to make a cash payment to HLI and to utilize its net assets to backstop Debtor's payment obligations.  Opp'n at 16–17; ER 1191–1200.  They assert that Landing would pull its support for the Plan if the valuation is disturbed.  The Court is unsure why it would require unwinding the Plan.  While Landing did contribute the Lots based on the $3.649 million valuation, it should have been aware that their value was hotly contested and that appellate consequences may result.  See In re Transwest, 801 F.3d at 1170.  It does not appear that the Plan calls for any additional cash contributions to be made by Landing. Debtor also has an interest in Landing that could be monetized, which Debtor suggested was one of the potential ways to pay down the Plan.

JS - 6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 5:21-cv-00988-JVS | Date | May 20, 2022 |
| | 5:21-cv-01019-JVS | | |
| | 5:21-cv-01021-JVS | | |

| | |
|---|---|
| Title | In re Terry Lee Fleming, Sr. |

Thus, the Court finds that the fourth factor weighs against a finding of equitable mootness.

     *v.*    *HLI's Appeal is Not Equitably Moot*

The first two factors weigh in favor of equitable mootness, but are not dispositive. The remaining two factors weigh against equitable mootness. Equitable mootness plays an important role in ensuring the finality of bankruptcy court orders, but Appellees have not met their "heavy burden to establish that there is no effective relief remaining for a court to provide." In re Focus Media, Inc., 378 F.3d 916, 923 (9th Cir. 2004) (quoting In re Pintlar Corp., 124 F.3d 1310, 1312 (9th Cir. 1997)). Refusing to consider the merits of HLI's appeal would require the Court to expand the contours of the equitable mootness doctrine. The Court declines to do so, both because of binding Ninth Circuit precedent, as well as the important supervisory role of Article III courts to exercise their jurisdiction over the merits of bankruptcy appeals. See In re One2One Comm'cns, LLC, 805 F.3d 428, 442 (3d Cir. 2015) (Krause, J., concurring) ("Dismissing appeals in the name of equitable mootness violates [the] 'virtually unflagging obligation of the federal courts to exercise the jurisdiction given them.'") (quoting Colo. River Water Conservation Dist. v. United States, 424 U.S. 800, 817 (1976)); see also In re Cont'l Airlines, 91 F.3d 553, 567–73 (3d Cir. 1996) (en banc) (Alito, J., dissenting) (questioning the legal basis for equitable mootness).

Thus, the Court declines to dismiss the appeal as equitably moot.

    **B.**    *Merits of HLI's Appeal*

On appeal, HLI argues that the 2021 Plan is not "fair and equitable" because it does not pay HLI's Class 1 Secured Claim in full. Section 1129 of the Bankruptcy Code details the specific requirements that must be met for Chapter 11 plan confirmation. If all section 1129(a) requirements are satisfied with the exception of 1129(a)(8), the Plan must satisfy section 1129(b), the cram down provision. See In re Ambanc La Mesa Ltd. P'ship, 115 F.3d 650, 653 (9th Cir. 1997). The plan may be crammed down over

JS - 6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 5:21-cv-00988-JVS | Date | May 20, 2022 |
| | 5:21-cv-01019-JVS | | |
| | 5:21-cv-01021-JVS | | |

| Title | In re Terry Lee Fleming, Sr. |

objection "if the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan." 11 U.S.C. § 1129(b)(1).  "A Chapter 11 plan confirmed over the objection of a 'class of secured claims' must meet one of three requirements in order to be deemed 'fair and equitable' with respect to the nonconsenting creditor's claim."  RadLAX Gateway Hotel, LLC v. Amalgamated Bank, 566 U.S. 639, 643 (2012).  A plan is fair and equitable if it provides:

> (i)(I) that the holders of such claims retain the liens securing such claims, whether the property subject to such liens is retained by the debtor or transferred to another entity, to the extent of the allowed amount of such claims; and (II) that each holder of a claim of such class receive on account of such claim deferred cash payments totaling at least the allowed amount of such claim, of a value, as of the effective date of the plan, of at least the value of such holder's interest in the estate's interest in such property;

> (ii) for the sale, subject to section 363(k) of this title, of any property that is subject to the liens securing such claims, free and clear of such liens, with such liens to attach to the proceeds of such sale, and the treatment of such liens on proceeds under clause (i) or (iii) of this subparagraph; or

> (iii) for the realization by such holders of the indubitable equivalent of such claims."

11 U.S.C. § 1129(b)(2)(A).

At the plan confirmation stage, the plan proponents must prove by a preponderance of the evidence that the plan satisfies all confirmation requirements.  In re Arnold and Baker Farms, 177 B.R. 648 (9th Cir. BAP 1994), aff'd, 85 F.3d 1415 (9th Cir. 1996), cert. denied, 519 U.S. 1054 (1997); In re Claar Cellars LLC, 623 B.R. 578, 590 (Bankr. E.D. Wash. 2021).  On appeal, "[w]hether a plan is fair and equitable is a factual determination reviewed for clear error."  In re Sunnyslope Housing Ltd. P'ship, 859 F.3d 637, 646 (9th Cir. 2017) (en banc) (citing In re Acequia, Inc., 787 F.2d 1352, 1358 (9th

JS - 6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 5:21-cv-00988-JVS | Date | May 20, 2022 |
| | 5:21-cv-01019-JVS | | |
| | 5:21-cv-01021-JVS | | |

| Title | In re Terry Lee Fleming, Sr. |

Cir. 1986)).  The value of property is a finding of fact that is reviewed for clear error, but the ultimate conclusion of indubitable equivalence is a question of law that is reviewed de novo.  See In re Arnold & Baker Farms, 85 F.3d at 1421.

The 2019 Plan was confirmed under section 1129(b)(2)(A)(iii), the indubitable equivalency test.  The BAP vacated the 2019 Plan and held that it did not provide HLI with the indubitable equivalent of its claim.  ER 20.  HLI contends that the 2021 Plan should be vacated for the same reasons.  Appellees argue that the Court should affirm the Bankruptcy Court on the merits because the 2021 Plan is proposed under sections 1129(b)(2)(A)(i) and (ii), and thus the indubitable equivalency standard does not apply. The Court begins by reviewing the BAP decision vacating the 2019 Plan before considering whether the 2021 Plan satisfies section 1129(b)(2)(A).

       i.    *2019 Plan*

The BAP did not disturb the Bankruptcy Court's determination of the valuation of the Lots.  ER 14.  However, it did hold that "transfer of the Lots for a dollar-for-dollar reduction of HLI's claim does not provide HLI with the indubitable equivalent of its secured claim."  ER 14.  The BAP identified the "fundamental issue" as whether "deeming a claim satisfied through a transfer of property necessarily limits the creditor's ability to look to its other collateral to satisfy any remaining portion of the claim in the event that the property is ultimately sold for less than the appraised value."  ER 16–17; see In re Arnold & Baker Farms, 85 F.3d at 1422 (concluding that the transfer of property did not provide the indubitable equivalent of the particular secured claim because the creditor was forced to assume the risk of receiving less on sale).

The BAP determined that the 2019 Plan presented the same concern as Arnold & Baker Farms because "HLI [was] forced to assume the risk that sales of the [Lots] will not yield the appraised value."  ER 17.  "If the court's valuation of the [Lots] is not accurate or if the market for the [Lots] does not behave as predicted over the next five years, HLI may not recover the value fixed by characterizing the transfer as 'payment.'" ER 17.  The BAP expressed "particular concern" with the Plan's failure to "adequately compensate HLI for the necessary time to sell the [Lots]."  ER 18.  Thus, it held that the

JS - 6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | |
|---|---|---|
| Case No. | 5:21-cv-00988-JVS<br>5:21-cv-01019-JVS<br>5:21-cv-01021-JVS | Date   May 20, 2022 |

Title   In re Terry Lee Fleming, Sr.

"valuation 'as of the date of transfer' was not equivalent to a cash payment on that date because it ignored . . . testimony regarding the anticipated market absorption." ER 18. The BAP contrasted this treatment with a theoretical alternative, whereby Landing would sell the lots and Debtor would make deferred cash payments from the Landing distributions. In that scenario, HLI would be compensated with interest in satisfaction of section 1129(b)(2)(A)(i)(I). But the BAP concluded that, on its own, "[t]ransfer of the Landing Lots as 'payment,' does not compensate HLI for the approximately five years needed to sell the lots, a time period established by Debtor's own expert." ER 18.

> ii.   *2021 Plan*

The Bankruptcy Court found that the 2021 Plan's treatment of HLI's claim satisfied section 1129(b)(2)(A)(i) and (ii). HLI's Secured Claim was worth $5,399,623.00 as of April 30, 2019, plus $70,179.20 in interest through the effective date of the 2019 Plan. ER 3439. It then determined that "[a]t that point $4,194,000.00 in value was transferred to HLI pursuant to the 2019 Plan, leaving a total of $1,275,802 remaining." ER 3439. Accounting for interest, the Bankruptcy Court found that "HLI's Secured Claim, as of the date of the Confirmation Hearing was no more than $1,513,133.07." ER 3439. The Bankruptcy Court concluded that the 2021 Plan was fair and equitable because HLI's claim would "be fully paid, to the extent allowed, in deferred cash payments over a period of five years, along with interest at 5% per annum." ER 3441. It did not strip any liens, and provided springing liens against the Carmel and Del Dios Properties that would attach to any sale proceeds and HLI would have the right to credit bid at the sales of those properties. ER 3441–42.

The Court holds that the Bankruptcy Court clearly erred by finding that the 2021 Plan's treatment of HLI's claim satisfies section 1129(b)(2)(A). While the 2021 Plan may have treated the reduced claim consistent with section 1129(b)(2)(A)(i) and (ii), the reduction of the claim based on the $3.694 million valuation of the Lots was not fair and equitable. The Bankruptcy Court simply applied a dollar for dollar reduction to HLI's claim based on the transfer of the Lots, which appears to directly contradict the earlier holding of the BAP and its underlying rationale. The transfer of the Lots was not consistent with any of the different prongs of section 1129(b)(2)(A).

JS - 6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    5:21-cv-00988-JVS                          Date    May 20, 2022
            5:21-cv-01019-JVS
            5:21-cv-01021-JVS

Title    In re Terry Lee Fleming, Sr.

 

As discussed above, the BAP previously held that the transfer of the Lots was not the indubitable equivalent of a $3.649 million payment on HLI's claim. It would violate the law of the case doctrine if the Bankruptcy Court concluded otherwise. See United States v. Lummi Indian Tribe, 235 F.3d 443, 452–53 (9th Cir. 2000) ("Under the [law of the case] doctrine, a court is generally precluded from reconsidering an issue previously decided by the same court, or a higher court in the identical case."). The Bankruptcy Court provides no additional rationale regarding indubitable equivalency in its order confirming the 2021 Plan, so it cannot be confirmed under 1129(b)(2)(A)(iii).

The Court concludes that the treatment of the Lots does not satisfy section 1129(b)(2)(A)(i). "Under clause (i), the secured creditor retains its lien on the property and receives deferred cash payments." RadLAX, 566 U.S. at 643. As described by the Bankruptcy Court, in this scenario "the holders retain their liens and receive total cash payments totaling at least the allowed amount of their claims, of a value, as of the effective date, at least equal to the value of such holder's interest in the estate's interest in such property." ER 3441. The 2021 Plan calls for HLI to retain its liens on the Carmel and Del Dios Properties and receive cash payments on what it construes as the reduced balance of HLI's claim. However, the 2019 transfer of the Lots clearly falls outside the scope of this provision. Section 1129(b)(2)(A)(i) does not provide any support for the decision to reduce the claim by the $3.694 million valuation of the Lots. Thus, the 2021 Plan cannot be confirmed under 1129(b)(2)(A)(i).

The Court also concludes that the treatment of the Lots does not satisfy 1129(b)(2)(A)(ii). "Under clause (ii), the property is sold free and clear of the lien, 'subject to section 363(k),' and the creditor receives a lien on the proceeds of the sale." RadLAX, 566 U.S. at 644. The Bankruptcy Court described this prong as being satisfied "if property subject to liens securing claims is to be sold under [section 363(k)] free and clear of such liens, liens attach to the sales proceeds and such liens are treated under (i) above or (iii) below." ER 3441. In this case, there was no sale of the Lots pursuant to section 363(k) during which time HLI had the opportunity to credit bid, nor was it able to attach a lien to any sale proceeds. While the 2021 Plan does give HLI the right to credit bid consistent with section 363(k) if the Carmel and Del Dios Properties are sold, there

JS - 6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   5:21-cv-00988-JVS          Date   May 20, 2022
           5:21-cv-01019-JVS
           5:21-cv-01021-JVS

Title   In re Terry Lee Fleming, Sr.

were no such provisions in place when the Lots were transferred.  Like the other provisions, section 1129(b)(2)(A)(ii) does not provide any support for the reduction of HLI's claim by $3.694 million based on the transfer of the Lots.  Thus, the 2021 Plan cannot be confirmed under 1129(b)(2)(A)(ii).

The fact that the transfer of the Lots was consummated long before the BAP vacated the 2019 Plan created a challenging situation.  A review of the evidentiary record shows that the Bankruptcy Court diligently attempted to find a solution to this issue on remand.  But while the 2021 Plan purports to be under 1129(b)(2)(A)(i) and (ii), it effectively provides for identical treatment of the Lots as the 2019 Plan.  The transfer of the Lots to HLI on the effective date of the 2019 Plan constrained the Bankruptcy Court's options, but there does not appear to be any reason why the 2021 Plan could not work around those obstacles.

As the proponents of the Plan, Appellees bore the burden at the confirmation stage of establishing by a preponderance of the evidence that all of the section 1129 requirements were satisfied.  However, the 2021 Plan failed to address the fact that valuing the Lots at $3.694 million did not provide any compensation to HLI for the necessary time to sell the Lots.  The BAP clearly expressed a concern that the 2019 Plan did not account for the carrying costs over the projected five years it would take to sell all of the Lots.  See ER 18 (holding that the 2019 Plan "fails to adequately compensate HLI for the necessary time to sell" the Lots because the valuation "ignored [Vanderley's] own testimony regarding the anticipated market absorption"); see also Vanderley Decl., Bankr. Dkt. 269, Ex. 3.  If the Bankruptcy Court had taken those costs into consideration as part of the 2021 Plan, then the Court could potentially be persuaded that the transfer of the Lots may be treated as a credit on HLI's claim or the "indubitable equivalent" of a lesser value.  But instead, the Bankruptcy Court glosses over the fact that the "$4,194,000.00 in value [that] was transferred to HLI pursuant to the 2019 Plan" consisted of $500,000 in cash and the transfer of the Lots.  This directly contradicts the rationale underlying the BAP's holding that the transfer of the Lots did not provide HLI with the indubitable equivalent of a $3.694 million payment on its claim.  While the 2021 Plan did not need to satisfy the indubitable equivalence standard, there is not a preponderance of the evidence to support the reduction of HLI's claim by $3.694 million

JS - 6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 5:21-cv-00988-JVS | Date | May 20, 2022 |
| | 5:21-cv-01019-JVS | | |
| | 5:21-cv-01021-JVS | | |

| Title | In re Terry Lee Fleming, Sr. |

based on the transfer of the Lots.  The Bankruptcy Court's finding that Appellees met their burden was clearly erroneous.

Accordingly, the Court holds that the 2021 Plan is not fair and equitable because it does not satisfy 1129(b)(2)(A) with respect to HLI's claim.

*C.    Remand*

The Court  remands this case to the Bankruptcy Court to fashion relief consistent with this order.  It is not this Court's role to devise a new plan.  However, this specific dispute over the proper valuation of the Lots has been ongoing for several years.  To assist the parties and the Bankruptcy Court in narrowing the issues on remand, the Court provides additional clarity on its views of the matter.  The Court encourages all parties involved to consider these guideposts and work collaboratively to develop a fair and equitable resolution in satisfaction of 1129(b)(2)(A).

First, like the BAP, the Court does not disturb the Bankruptcy Court's finding that the aggregate present-day value of the Lots was $3.694 million as of April 2019.  The Bankruptcy Court considered expert testimony and weighed the evidence before it.  There is no indication that it made a clear error on that point.  HLI's continued efforts to call into question the methodology used to determine the value of the Lots as of April 30, 2019 are unpersuasive and unhelpful to reaching a resolution.  However, the transfer of the Lots to HLI in April 2019 did *not* provide it with the indubitable equivalent of a $3.694 million payment on its claim.  As discussed by the BAP, this treatment of HLI's claim did not take into account holding costs, discount cash flow analysis, or associated risk.  The transfer of the Lots did not provide HLI with the indubitable equivalent of $3.694 million in value and thus cannot support a dollar-for-dollar reduction of HLI's claim in that amount.

Next, the ultimate sale price of the Lots is *not* determinative of the amount  of value that should be credited towards HLI's claim.  HLI argues that the valuation of the Lots should be based on its calculation that it received a total of $2,373,062.50 in net sales proceeds from the Lots.  See Dkt. 27 at 3.  But the relevant question is the value that

JS - 6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 5:21-cv-00988-JVS | Date | May 20, 2022 |
|---|---|---|---|
| | 5:21-cv-01019-JVS | | |
| | 5:21-cv-01021-JVS | | |

Title    In re Terry Lee Fleming, Sr.

HLI received at the time of the transfer of the Lots. The principle of finality is essential to the bankruptcy process. "Dirt for debt" transfers are a valid means of reducing claims in bankruptcy. In addition to assuming risk, HLI also received the potential for growth in value. If valuable minerals were discovered on the Lots such that the property appreciated significantly in value, Appellees would not be able to propose a new plan with reduced cash payments to HLI. Similarly, HLI's sale of the Lots for a lower price does not mean that the Bankruptcy Court must determine that it only received an equivalent amount of value in April 2019. This is especially true given that the Bankruptcy Court found that a commercially reasonable sale would require the sale of individual lots as opposed to a bulk sale. While HLI may have had valid business reasons to engage in a bulk sale, its choice to do so in 2021 does not impact the value of the Lots when they were transferred in April 2019.

If the Court were to simply conclude that HLI's claim should be reduced by the amount it ultimately received from the sale of the Lots, then the feasability concerns raised by the Bankruptcy Court would come into play. It would undermine the ability of the bankruptcy process to establish finality. Fluctuations in value would lead to relitigation of claims. A dissatisfied creditor could opt to sell a property in a non-commercially reasonable manner and then ask the bankruptcy court to modify a settled plan by providing cash payments to make up the difference. It also could open the door to self-dealing transactions. Those policy concerns weigh heavily against the Court adopting HLI's view of the law.

Finally, the path forward will almost certainly require providing a credit on HLI's claim based on the value of the Lots in April 2019. Unwinding the transfer of the Lots does not appear feasible at this time. While there is no provision of 1129(b)(2)(A) that allows for a dollar-for-dollar reduction of HLI's claim based on the $3.694 million valuation, that does not mean that the transfer cannot be credited against HLI's claim. It also does not mean that HLI is entitled to cash payments to make up the entirety of the shortfall between the $3.694 million and the ultimate value it realized on the sale of the Lots. While there may be other options, it appears that one potential avenue going forward would be to modify the 2021 Plan to reduce HLI's claim based on what the indubitable equivalent of the Lots was at the time of the transfer.

JS - 6

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 5:21-cv-00988-JVS<br>5:21-cv-01019-JVS<br>5:21-cv-01021-JVS | Date | May 20, 2022 |

| | |
|---|---|
| Title | In re Terry Lee Fleming, Sr. |

If the Bankruptcy Court were to adopt this approach, additional fact-finding would be needed. The Bankruptcy Court has not made any findings on the accuracy of any DCF analysis, beyond rejecting HLI's expert. It appears that Vanderley performed a similar analysis to what will ultimately be necessary to determine the accurate value of what was transferred to HLI. See Vanderley Decl., Bankr. Dkt. 269, Ex. 3. Appellees relied on this analysis when they proposed the Modified 2019 Plan. ER 41–47. However, the Bankruptcy Court never made any findings about Vanderley's choice of projected growth in sales price, discount rate, or sales velocity. Instead, it cited to Vanderley's own description of his uncertainty regarding that portion of his analysis. ER 3721 n.4. On remand, the Bankruptcy Court should hear evidence and carefully determine what values should have been used when performing a DCF analysis in April 2019. The choice of inputs will have a tremendous impact on the valuation of the Lots at the time of transfer. While that is not the only option, the Court encourages the parties to work collaboratively to find an efficient and expeditious resolution to these issues.

In sum, HLI is entitled to payment in full on its claim. This means that it cannot be reduced by $3.694 million based on the transfer of the Lots. However, this does not mean that it is entitled to the cash equivalent of the claimed $1,321,076.50 shortfall. In the Court's view, the question to be answered on remand is what reduction to apply to HLI's claim based on the transfer of the Lots in April 2019, in light of their value at that time (which the Bankruptcy Court found to be $3.694 million), the discounted cash flow analysis (which the Bankruptcy Court did not conclusively address), and the holding costs associated with the sale based on the projected time frame for individual sales (which the Bankruptcy Court did not conclusively address). On remand, the Court would encourage the parties to carefully consider the holdings of this Court, the BAP, and the Bankruptcy Court, and collaboratively craft a resolution within those parameters.

## IV. CONCLUSION

For the foregoing reasons, the Court **VACATES** the Bankruptcy Court's order confirming the plan and **REMANDS** for further proceedings consistent with this decision. The Court finds that oral argument would not be helpful in this matter. Fed R.

JS - 6

### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    5:21-cv-00988-JVS                           Date    May 20, 2022
            5:21-cv-01019-JVS
            5:21-cv-01021-JVS

Title       In re Terry Lee Fleming, Sr.

Civ. P. 78; L.R. 7-15.


**IT IS SO ORDERED.**


                                                           :        0

                                Initials of Preparer      lmb